UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CRIMINAL NO. |
| v. | ) |
| | ) 18 U.S.C. §152(2) |
| JAMES S. GREGSON, | ) (Bankruptcy Fraud - |
| Defendant | )   False Oath) |
| | ) |
| | ) 18 U.S.C. §152(1) |
| | ) (Bankruptcy Fraud - |
| | )   Concealment of Assets) |
| | ) |
| | ) 26 U.S.C. §7206(1) |
| | ) (Filing a False Tax Return) |

## INFORMATION

The United States Attorney charges that:

**I.   BACKGROUND**

1. At all times material to this Information, defendant **JAMES S. GREGSON** ("**GREGSON**") was an individual living in Wakefield, Massachusetts, and was licensed to practice law.

2. On or about October 14, 2005, **GREGSON** caused to be filed in the United States Bankruptcy Court for the District of Massachusetts in Boston a bankruptcy petition for liquidation under Chapter 7 of the Bankruptcy Code. The case was captioned In re: James S. Gregson, case number 05-22857.

3. On or about November 18, 2005, **GREGSON** caused to be filed in the Bankruptcy Court a Statement of Financial Affairs and schedules of his personal property and debts. Each of those documents was declared to be true by **GREGSON** under penalty of perjury, and signed on or about November 18, 2005.

1

## II. COUNT 1 - BANKRUPTCY FRAUD (FALSE OATH) 18 U.S.C. §152(2)

4. The United States Attorney realleges and incorporates by reference paragraphs 1-3 of this Information, and further charges that:

5. In or about December 2002, **GREGSON** personally negotiated the purchase of a Massachusetts Lottery "Cash Windfall" winning $1 million lottery ticket. The owner of the winning lottery ticket was entitled to collect twenty annual payments, after state and federal taxes were withheld, of $35,000.

6. **GREGSON** paid approximately $250,000 in cash for the winning lottery ticket, using $150,000 he withdrew from his law office's IOLTA account and a $100,000 bank loan he personally obtained. After purchasing the lottery ticket, **GREGSON** caused it to be redeemed with the Massachusetts State Lottery Commission in the name of a trust which **GREGSON** established for that purpose.

7. In May, 2003, **GREGSON** refinanced his primary residence and used a portion of the proceeds to pay off the $100,000 bank loan and repay $150,000 to his law office's IOLTA account.

8. In the three years prior to filing for bankruptcy, **GREGSON** caused the annual $35,000 lottery payments to be deposited, respectively, into his IOLTA bank account, a personal bank account, and his law office operating bank account.

9. In the documents he caused to be filed with the Bankruptcy Court, **GREGSON** failed to disclose any interest in the winning lottery ticket and also failed to disclose his receipt of the $35,000 annuity payments.

10. At bankruptcy meetings of creditors held on or about November 18, 2005 and

December 20, 2005, **GREGSON** failed to disclose any interest in the winning lottery ticket and also failed to disclose his receipt of the $35,000 annuity payments.

11. In or about May 2006, **GREGSON's** bankruptcy trustee received a telephone tip indicating that **GREGSON** had an interest in undisclosed assets, including a winning lottery ticket.

12. On or about July 26, 2006, GREGSON was questioned under oath by the attorney for the bankruptcy trustee. Among other things, **GREGSON** was asked questions concerning the purchase of lottery tickets. **GREGSON** denied having purchased lottery tickets himself, but stated that his wife had purchased a winning lottery ticket in the name of a trust.

13. **GREGSON** further testified as follows:

> Q    Do you know how much she paid?
>
> A    I believe it was about 250,000.
>
> Q    What was the source of that payment?
>
> A    Probably my parents.
>
>     \* \* \*
>
> Q    Can you say conclusively it was your parents? I assume 250,000 is a big enough number that you'd recall what the source of the funds were.
>
> A    I'm sure it was my parents.

14. In or about February 2007, **GREGSON** procured an affidavit from a family member which falsely corroborated **GREGSON's** sworn testimony that the $250,000 used to purchase the winning lottery ticket was derived from cash accumulated by **GREGSON's** parents. The affidavit also falsely represented that **GREGSON** was not a participant in or privy to any of the

discussions resulting in the acquisition of the lottery ticket. **GREGSON** caused that affidavit to be submitted to his bankruptcy trustee, knowing that the assertions in the affidavit were false.

15. In or about July 2007, **GREGSON's** bankruptcy trustee reached a settlement of claims with **GREGSON**. In requesting approval of the settlement agreement by the Bankruptcy Court, the trustee relied on the representations in the family member's affidavit that **GREGSON** had not contributed to the purchase of the lottery ticket. The trustee asserted that he could have "substantial difficulty" demonstrating that **GREGSON** maintained an interest in the trust which held the lottery ticket because **GREGSON** "allegedly made no financial contribution to the asset acquisition" (i.e., the winning lottery ticket) "and holds no legal or beneficial interest in the [] Trust."

16. On or about July 26, 2006, in the District of Massachusetts, the defendant

### JAMES S. GREGSON

did knowingly and fraudulently make a false oath concerning a material matter in a bankruptcy case under Title 11 of the United States Code (the bankruptcy laws), in that defendant **JAMES S. GREGSON**, in sworn testimony given pursuant to the United States Bankruptcy Code, in the proceeding captioned In re: James S. Gregson, case number 05-22857, testified as follows:

    Q    Do you know how much she paid?

    A    I believe it was about 250,000.

    Q    What was the source of that payment?

    A    Probably my parents.

                          \* \* \*

    Q    Can you say conclusively it was your parents?

> I assume 250,000 is a big enough number that you'd recall what the source of the funds were.
>
> A    I'm sure it was my parents.

When in truth and in fact, as **GREGSON** well knew, **GREGSON** was the source of the $250,000 payment and not his parents.

All in violation of Title 18, United States Code, Sections 152(2) and 2.

### III.  COUNT 2 - BANKRUPTCY FRAUD (CONCEALMENT OF ASSETS) 18 U.S.C. §152(1)

17. The United States Attorney realleges and incorporates by reference paragraphs 1-3 and 5-15 of this Information, and further charges that:

18. In or about September 2003, **GREGSON** purchased for $200,000 the right to all future annuity payments from a second winning lottery ticket, a Massachusetts Lottery "Set For Life" scratch ticket. At the time of the purchase, the owner of the ticket was guaranteed to receive annual payments of $35,000, after taxes were withheld, for fifteen years or for the remainder of the winner's life, whichever was longer.

19. In the two years prior to filing for bankruptcy, **GREGSON** received the $35,000 lottery payments from the "Set For Life" winning ticket and caused them to be deposited into his personal bank account. In 2006, after he filed his bankruptcy petition, **GREGSON** received a third $35,000 payment which he caused to be deposited in his law firm's IOLTA bank account.

20. In the documents he caused to be filed with the Bankruptcy Court, **GREGSON** failed to disclose his right to at least thirteen annual payments of $35,000 from the winning Mass Lottery "Set For Life" scratch ticket and failed to disclose his receipt of any past lottery payments.

21. At bankruptcy meetings of creditors held on or about November 18, 2005 and December 20, 2005, and during a bankruptcy deposition held on July 26, 2006, **GREGSON** failed to disclose his right to at least thirteen annual payments of $35,000 from the winning Mass Lottery "Set For Life" scratch ticket and failed to disclose his receipt of any past lottery annuity payments.

22. In or about 2007, without the knowledge or approval of his bankruptcy trustee, **GREGSON** caused the rights to the "Set For Life" scratch ticket annual lottery payments to be sold for approximately $360,000.

23. Beginning on or about October 14, 2005, and continuing until in or about 2007, in the District of Massachusetts, the defendant

**JAMES S. GREGSON**,

did knowingly and fraudulently conceal from creditors in a bankruptcy proceeding under Title 11 of the United States Code (the bankruptcy laws), captioned In re: James S. Gregson, case number 05-22857, in the United States Bankruptcy Court for the District of Massachusetts, property belonging to the estate of the debtor **JAMES S. GREGSON**, to wit, the right to at least thirteen annual payments of $35,000 from a winning Mass Lottery "Set For Life" scratch ticket.

All in violation of Title 18, United States Code, Sections 152(1) and 2.


## IV. COUNT 3 - FILING A FALSE TAX RETURN (26 U.S.C. §7206(1))

24. The United States Attorney realleges and incorporates by reference paragraph 1 of this Information, and further charges that:

25. On or about January 5, 2007, in the District of Massachusetts, the defendant

**JAMES S. GREGSON**

did willfully make and subscribe a U.S. Individual Income Tax Return, Form 1040, for tax year 2003, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Director, Internal Revenue Service, Andover, Massachusetts, which Return **JAMES S. GREGSON** did not believe to be true and correct as to every material matter in that said Return fraudulently stated Total Taxable Income of $0, when in fact **JAMES S. GREGSON** had Total Taxable Income of at least $452,332.69 during that year.

All in violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE ALLEGATIONS

(18 U.S.C. §981 and 28 U.S.C. §2461)

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

26. Upon conviction of any offense in violation of 18 U.S.C. §152 alleged in Counts 1 or 2, the defendant,

**JAMES S. GREGSON**

shall forfeit to the United States, pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

27. If any of the property described in paragraph 26 hereof as being forfeitable, as a result of any act or omission of the defendant –

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred to, sold to, or deposited with a third party;

   c. has been placed beyond the jurisdiction of this Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. §2461(c), incorporating 21 U.S.C. §853(p), to seek forfeiture of all other property of the defendant up to the value of such property.

All pursuant to 18 U.S.C. §981 and 28 U.S.C. §2461(c).

<div style="text-align:right">
CARMEN M. ORTIZ  
United States Attorney  

By: *[signature]*  
MARK J. BALTHAZARD  
Assistant U.S. Attorney
</div>